CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 18 2013

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| 77 CONSTRUCTION COMPANY, | |
| Plaintiff, | Civil Action No.: 7:13-cv-340 |
| v. | **MEMORANDUM OPINION** |
| UXB INTERNATIONAL, INC., | James C. Turk<br>Senior United States District Judge |
| Defendant. | |

Pending before the Court is Defendant UXB International, Inc.'s Motion to Quash Subpoena *Duces Tecum*, ECF No. 28, in which UXB moves the Court to quash a subpoena *duces tecum* issued by Plaintiff 77 Construction and directed toward the Defense Contract Audit Agency ("DCAA"). Plaintiff has filed a brief in opposition in which it also requests its attorneys' fees associated with responding to the motion, see ECF No. 35, and neither party has requested a hearing. The motion is thus ripe for disposition. For the reasons set forth below, the motion to quash is **DENIED** and the Plaintiff's request for fees is also **DENIED.**

I.   BACKGROUND

This case stems from a contract dispute between a contractor with a large federal contract—Defendant UXB—and one of its sub-contractors—Plaintiff 77 Construction. Specifically, UXB was awarded a Prime Contract by the United States Army Corps of Engineers dated June 9, 2004. Pursuant to the Prime Contract, a task order was issued with order number W912DY-04-D-00190007 (the "Task Order"), which authorized funds for mine clearance and other related projects at Bagram Air Base in Afghanistan. UXB and 77 Construction entered into a series of purchase orders pursuant to that Task Order, i.e., the subcontracts (the "Purchase

Orders"), whereby 77 Construction was to provide construction and related services in support of UXB's demining operations at Bagram. ECF No. 29 at ¶¶ 3-5.

In its First Amended Complaint, 77 Construction contends that it performed work pursuant to the Purchase Orders and submitted invoices to UXB, who in turn submitted those invoices to the federal government and received payment from the Government under the Prime Contract. UXB has not paid the invoices in their entirety and 77 Construction alleges this constitutes a breach of its contract with UXB and that it was damaged in the amount of $982,151.68. The Amended Complaint also contains a *quantum meruit* claim for services 77 Construction performed during a two-week period when there was no purchase order in effect, in the amount of $17,464.23. See ECF No. 26, Am. Compl. at 3-5.

UXB admits in its Answer that it has not paid the entire amount of the invoices submitted by 77 Construction, but contends that 77 Construction did not fully perform its contractual obligations. UXB also expressly denies that 77 Construction is entitled to any further payment from UXB. See ECF No. 27 at 1-2. UXB's Answer (and Counterclaim) also alleges that the invoices submitted by 77 Construction were not properly supported with certain required documents and that, despite repeated requests from UXB, 77 Construction "has either refused to provide many of these requested documents or simply does not have" them. UXB further asserts that

> [a]ll costs submitted by UXB are subject to audit by the Government, and, as part of the audit, UXB may be required to provide this documentation to the Government. Without the proper supporting documentation, UXB is subject to having to repay monies to the Government, including any monies, which may have

been paid to 77 Construction without adequate cost documentation.

Id. at 3-4. UXB's Counterclaim, likewise, is based on its allegation that 77 Construction breached its contractual obligations to UXB when it failed to provide certain records and when it refused to submit to a cost audit requested by UXB. See, e.g., id. at 8-10.

## II. ANALYSIS

The challenged subpoena issued to DCAA commands production of six categories of documents, all of which reference the "Contract," defined in the subpoena as "the contract or order for supplies or services between UXB International, Inc. and the Federal Government numbered W912DY-04-D-0019007 which involves demining work and associated services in support of Bagram Air Field in Afghanistan." ECF No. 29-1 at 7-8. Thus, it appears Plaintiff is requesting information related to the Task Order, and not the Prime Contract, an interpretation both parties share. See ECF No. 29 at 4; ECF No. 35 at 4. The six categories are as follows:

> 1. [D]ocuments submitted to [DCAA] by the U.S. Army Corps of Engineers or by UXB, International, Inc. for purposes of obtaining payment under the Contract[;]
>
> 2. [D]ocuments associated with the Contract in your possession[;]
>
> 3. [A]udit documents which relate to the Contract[;]
>
> 4. [D]ocuments which indicate that UXB International, Inc. should retain any money owed to any subcontractors under the Contract[;]
>
> 5. [D]ocuments which indicate that UXB International, Inc. has failed to comply with its obligation to provide supporting documentation to the government under the Contract[; and]
>
> 6. [D]ocuments which indicate that UXB International, Inc. must repay any sums paid to it for work performed by any subcontractors under the Contract.

ECF No. 29-1 at 7-8.

UXB advances four reasons why the Court should quash the subpoena directed to DCAA: "(1) it is vague, unduly broad and burdensome; (2) there is insufficient time for the DCAA to produce the requested documents; (3) the Requests require the DCAA to engage in legal speculation[;] and (4) the Requests are unduly burdensome and untimely because many of the documents will not be created or identified until the actual audit is completed." ECF No. 29 at 4.

Prior to reaching the merits of UXB's arguments, the Court turns first to whether UXB has standing to raise them at all. Plaintiff 77 Construction apparently concedes that UXB has standing to bring its motion to quash. See ECF No. 35 at 2 & n.3 (acknowledging a "careful reading" of subsection 45(c)(3) allows "any entity or person" to file a motion to quash). Based on this concession and the Court's determination that the motion should be denied, the Court will not address the issue of standing, other than to note that it is at least open to debate whether UXB has standing to bring its motion to quash. See, e.g., United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.") (citations omitted); cf. HDSherer LLC v. Natural Molecular Testing Corp., __ F.R.D. __, 2013 WL 44278813, at *1-*2 (D.S.C. July 31, 2013) (concluding a defendant had standing under Rule 26(c) to challenge a subpoena directed to a third-party and thus not deciding whether Rule 45(c) allows a party to object to a third-party subpoena); Singletary v. Sterling Transport Co., Inc., 289 F.R.D. 237, 240 & n.2 (E.D. Va. 2012).

Turning to the merits of UXB's motion, Rule 45(c)(3) requires the Court, upon timely motion, to quash or modify a subpoena that "(i) fails to allow a reasonable time to comply;" (ii) requires a non-party to travel beyond certain geographical limits; "(iii) requires disclosure of

privileged or other protected matter . . . ; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3).[1] The Fourth Circuit has recognized that the determination of whether an "undue burden" exists "encompasses situations where the subpoena seeks information irrelevant to the case" and that relevance remains an appropriate factor for the Court to consider even where a subpoena is issued to a non-party. Cook v. Howard, 484 F. App'x 805, 812 & n.7 (4th Cir. 2012) (unpublished). Thus, to the extent that 77 Construction contends the Court may not address arguments based on a lack of relevance, the Court disagrees.

As noted, one of UXB's arguments is that the subpoena should be quashed because it requests documents DCAA does not have (or does not yet have), either because 77 Construction failed to provide them or because DCAA has not yet begun its audit of the Task Order.[2] The Court finds this argument meritless.[3] Rule 45 allows a party to command a non-party to produce documents in that person's "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). If DCAA does not have documents responsive to 77 Construction's subpoena, it need not produce any and it is certainly not obligated—contrary to UXB's suggestion—to ask for documents from UXB. Similarly, if DCAA has only limited responsive documents, then that is all that it is required to produce—those documents within its "possession, custody, or control." See id.

---

[1] Effective December 1, 2013, this provision will be amended and will be renumbered, with modifications, as Rule 45(d)(3).

[2] See ECF No. 29 at 2 ("there is no evidence that the DCAA has even begun the process of auditing UXB's subcontracts under the Task Order").

[3] UXB's explanations as to why DCAA may not have many (or any) documents responsive to the requests may well be factually correct; the Court does not know one way or the other. The Court simply rules that the mere fact that responsive documents are not within a person's possession is not a grounds for striking a request for those documents, if the request is otherwise proper.

As to claims that the requested documents lack relevance, the Court disagrees. The requests are relevant and "reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b). As is evident from the factual background above, a critical issue in this case is whether or not appropriate documentation has been provided to UXB by 77 Construction. A closely related issue is whether appropriate documentation has been provided to the federal government agency responsible for conducting the final audit—DCAA—and, if not, whether that audit will result in UXB being denied payment as a result of any lack of documentation. Thus, the documents sought by 77 Construction from DCAA, and particularly those documents that would relate to the specific Purchase Orders between the parties, are clearly relevant.

UXB also argues that the requests are overbroad and unduly burdensome because they request documents related to the Task Order and are not limited to "the Purchase Orders that are the subject of this litigation." ECF No. 29 at 4. Indeed, UXB reasons (based on the fact that the Task Order involves approximately $34 million and the Purchase Orders between UXB and 77 Construction only involve approximately $5 million), that only about fifteen percent of the documents requested will relate to the Purchase Orders at issue in the lawsuit. ECF No. 29 at 4-5. 77 Construction counters that it is attempting to investigate UXB's filings and that the requested documents will allow it to evaluate filings related to other purchase orders under the same Task Order "to see the backup documentation [and] compare it to its [own] submissions." ECF No. 35 at 3. The Court is convinced that this is an appropriate subject of discovery and will not quash the subpoena on the grounds that it is overbroad.

To the extent that UXB is arguing the time for responding is inadequate, or that the number of documents that will have to be produced renders the requests overly burdensome, the Court concludes that UXB has not adequately shown this to be the case. Indeed, if DCAA has

6

not yet begun its audit or requested documents from UXB, there should be very few documents to produce. In the event that the Court is incorrect about this, DCAA may file its own motion to quash or motion for protective order, explaining how it cannot timely comply with the subpoena or the effort and expense involved in gathering such documents.

Finally, the Court does not find the form of requests 4, 5, and 6 to be improper, although perhaps they could have been more clearly worded. Quite simply, the language requesting documents "which indicate" that UXB had certain obligations or failed to comply with any obligations, can be interpreted in a way that does not require legal speculation, contrary to UXB's contention. That is, these requests seek documents whose subject matter or content show the obligations or failures identified. Additionally, to the extent DCAA is confused about the requests, it is not precluded from seeking relief from the Court, as noted above.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to quash filed by UXB and also **DENIES** Plaintiff's request for attorneys' fees.

ENTER: This ___ day of November, 2013.

James C. Turk
Senior United States District Judge