CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 04 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| 77 CONSTRUCTION COMPANY, ) | |
| ) | Civil Action No.: 7:13-cv-340 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINON** |
| ) | |
| UXB INTERNATIONAL, INC., ) | By: Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendant. ) | |

Pending before the court is a motion filed by defendant UXB International, Inc. ("UXB") entitled a "Motion to Enforce Settlement Agreement and for Summary Judgment on Settled Claims." Dkt. No. 127. UXB argues that the parties reached a settlement agreement during a February 6, 2014 settlement conference and requests that the court enforce the terms of that agreement and compel plaintiff's performance under it. In the alternative, UXB requests summary judgment on those disputed issues in the underlying litigation that would have been resolved or rendered moot by the Settlement Agreement. See Dkt. No. 128 at 2.

In response, plaintiff 77 Construction Company ("77 Construction") "admits it entered into a Settlement Agreement" and "concedes it has not been able to substantially complete its obligations before November 24, 2014, when UXB filed its motion."[1] But it argues that UXB's motion should nonetheless be denied on several grounds. For example, it contends that the period for performance is not expressly stated in the settlement agreement and thus that it is not technically in breach. Relatedly, 77 Construction argues that it has performed and that UXB should not be excused from performing its obligations under the agreement. In the alternative, 77

---

[1] 77 Construction offers a number of explanations as to why it has encountered delays in its performance, including problems finding an expert and difficulty locating documents and records.

Construction contends that the settlement is not a complete or enforceable contract because it was an agreement to negotiate at a later time. Finally, 77 Construction argues that summary judgment is not an appropriate remedy because UXB has not established the absence of disputed material facts.

Just as it offers arguments in the alternative, 77 Construction also asks for relief in the alternative. First, it requests that the court find the agreement enforceable, and grant an additional 90-day stay and enter an amended scheduling order so that the parties can perform under it. In the alternative, it requests that the court find the settlement is not complete or enforceable and restore the case back on the docket for litigation. As to both options, it additionally requests that the court deny UXB's motion for summary judgment.

For the reasons set forth herein, the court concludes that the agreement between the parties is a mere agreement to agree and is not an enforceable settlement as to the claims between them. Accordingly, the court will deny UXB's motion to enforce the agreement and its motion for summary judgment.

## BACKGROUND

In general terms, this case involves a dispute between a government contractor, UXB, and one of its sub-contractors, 77 Construction, over work performed by 77 Construction at Bagram Air Base in Afghanistan, where UXB had a contract with the United States government to provide for mine clearance and other related projects. 77 Construction argues that it is entitled to payment for work it performed under its contract with UXB. UXB counters that 77 Construction submitted invoices for work using improper billing practices and otherwise submitted invoices that were not properly documented as required by its contract and by applicable government regulations. See generally Dkt. No. 39 at 1-3 (prior memorandum opinion

addressing a motion to quash and setting forth basic background of case). UXB has also filed a counterclaim.

In January 2014, the parties had filed motions for summary judgment and a number of other motions, including motions relating to experts, and argued those motions before Senior United States District Judge James C. Turk, to whom this case was assigned. At the time, the case was set for trial beginning February 5, 2014. At the parties' request, Judge Turk postponed the trial and referred the case to mediation before United States Magistrate Judge Robert S. Ballou, who conducted a settlement conference on February 6, 2014.

At the conclusion of the settlement conference, the magistrate judge had the parties and counsel confirm certain agreements on the record, and a court reporter transcribed that portion of the mediation. When he began, the magistrate judge stated,

> We have convened today for the purposes of a mediation. The parties have worked very hard and reached an agreement today to resolve some matters and to continue to work to resolve other matters. We wanted to memorialize this agreement on the record today, understanding that the lawyers will be putting together a more formal agreement later on. But the purpose of putting this on the record is to have an enforceable agreement coming out today.

Dkt. No. 116, Transcript ("Tr.") at 3.

He then proceeded to set forth the terms of the agreement. In pertinent part, the parties agreed to the following terms:

1. the parties will agree to a 90-day stay of the litigation (with court approval) during which time: (a) the parties will jointly request that the Army Corps of Engineers provide a position regarding the invoices disallowed by UXB; and (b) UXB will not make "its final certification of costs under the prime contract unless directed

3

to do so by the corps or by agreement of the parties." The stay might also be extended by agreement with the consent of the court.

2. 77 Construction will withdraw invoice 348 and "will not submit those costs."

3. 77 Construction will also "withdraw invoice numbers 212, 329, 363, 382, 394, 395, and 411 and will submit a request for equitable adjustment for the time and materials covered by those invoices, with a 2.5 percent overhead and a 10 percent profit allowance on the amount of $193,877.10. Any payments made pursuant to the request for equitable adjustment will not preclude 77 Construction from requesting additional requests for equitable adjustment if its allowed overhead rate changes."

4. "UXB will issue a purchase order to 77 Construction in the amount of $193,877.10. And 77 Construction will then issue an invoice for that amount, along with a certification under oath that the cost of materials therein are accurate and were actually incurred in the performance of these services. 77 Construction will have the option of receiving payment of the invoice when approved by the corps or by providing a letter of credit from a U.S. financial institution" in that amount "providing that, in the event the expenses are not approved by the corps, UXB may call the letter of credit if the money has not been refunded within 15 days of the denial."

5. 77 Construction shall retain a U.S. certified public accountant "experienced in government contract audits and cost accounting," to prepare and render an opinion "as to 77 Construction's final incurred cost submission for 2010 in accordance with the DCAA accounting manual requirements; and . . . its 2010

4

overhead and indirect rates in accordance with US GAAP and FAR provisions." The expert opinion will be provided to UXB along with all supporting documentation and 77 Construction's DCAA statement of adequacy of their accounting systems for 2010. UXB will review and to submit to the corps revised invoices consistent with the expert's report to the corps, "subject to the requirements of the prime contract and FAR."

Dkt. No. 116, Tr. at 3-6. There were some additional terms, as well, including that "UXB is under no obligation to certify or submit any additional costs or expenses of 77 Construction unless it determines in its sole discretion that it can do so in compliance with its obligations and duties as the prime contractor." Id. at 5-6. Additionally, the parties "will be free to resume litigation" if they "cannot resolve the outstanding issues outside the judicial process" and "[n]either party, by this agreement, waives or releases any claims or remedies that . . . they may otherwise have against the other." Id. at 6.

After announcing those terms, the representatives of each party and the attorneys verified on the record that those were the agreed terms. Dkt. No. 116 at 6-8; see also Dkt. No. 128-10 (July 31, 2014 joint status report from counsel to the court setting forth the parties' obligations as twelve numbered items).

It does not appear that the agreement was ever reduced to writing other than the transcription described above. Additionally, neither party contends that the settlement agreement resolved all the disputed invoices between the parties. Instead, as acknowledged in a subsequent joint letter from counsel to the court, the terms of the agreement "narrow the scope of disputed issues, and should facilitate the resumption" of settlement discussions. Dkt. No. 128-10 at 1 (July 31, 2014 letter). The letter further explained, however, that "even if all conditions of the

5

agreement are fulfilled, there remains the possibility that this will not resolve the dispute between the parties and the matter may still proceed to trial." Id.

In addition to the initial 90-day stay agreed to by the parties and entered by the court, the case was subsequently stayed for an additional ninety-day period by Judge Turk. Dkt. No. 119. On July 8, 2014, the case was transferred to the undersigned. Dkt. No. 120. After asking for and receiving a status report from the parties, see Dkt. No. 128-9 and 128-10, the court entered another temporary stay (through October 3, 2014), Dkt. No. 121, but then lifted the stay and set the case for trial in July 2015. This motion followed.

## ANALYSIS

**Motion to Enforce Settlement Agreement**

This court has inherent authority to enforce a settlement agreement within the context of the underlying litigation, which "has the 'practical effect' of entering a judgment by consent." Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002) (quoting Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009 (4th Cir. 1981)). In determining whether a settlement agreement has been reached, the court must look "to the objectively manifested intentions of the parties." Moore v. Beaufort Cnty., N.C., 936 F.2d 159, 162 (4th Cir. 1991). A court may enforce a settlement agreement reached by the parties only after "it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." Hensley, 277 F.3d at 540 (citation omitted).[2]

---

[2] Where there is a factual dispute over the existence of an agreement, over the attorneys' authority to enter into the agreement, or over the agreement's terms, the district court may not summarily enforce an agreement but must instead conduct an evidentiary hearing to resolve the dispute prior to doing so. Hensley, 277 F.3d at 540-41 (citing Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983)). In this case, the court need not resolve factual disputes and declines to hold a hearing. Instead, the court relies simply on the terms of the parties' agreement (over which there is no dispute) and concludes that, on its face, the agreement is not an enforceable contract under Virginia law.

6

The record before the court contains some indications that the parties intended this to be a partial settlement agreement. For example, they all agreed on the record to terms, after the magistrate judge stated the purpose was to have an "enforceable agreement." Dkt. No. 116 at 3. Additionally, both parties have repeatedly referred to their "agreement" in various documents submitted both to the court and in letters to each other.

The court concludes, though, that the parties' agreement was merely an agreement to attempt to settle their claims, or an agreement to negotiate at a later date, which is not an enforceable agreement under Virginia law. See W.J. Schafer Assocs., Inc. v. Cordant, Inc., 493 S.E.2d 512, 515 (Va. 1997); Kay v. Prof'l Realty Corp., 281 S.E.2d 820, 822 (Va. 1981) (affirming dismissal on demurrer where "the agreement 'to negotiate a settlement' constituted nothing more than an agreement to agree upon a settlement at a later date" and failed "to provide a reasonably certain basis for determining an adequate remedy and therefore is unenforceable"). As other district courts have recognized, "an agreement to 'negotiate open issues in good faith' to reach a 'contractual objective within [an] agreed framework' will be construed as an agreement to agree rather than a valid contract." Cyberlock Consulting, Inc. v. Info. Experts, Inc., 939 F. Supp. 2d 572, 579 (E.D. Va. 2013) (quoting Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002) and Va. Power Energy Mktg., Inc. v. EQT Energy, LLC, 3:11cv630, 2012 WL 2905110, at *4 (E.D. Va. July 1, 2012)). See also Bousman v. Lhommedieu, 2013 WL 3381369, at *4 & n.3 (Va. Ct. App. July 9, 2013) (the principle that agreements to agree are unenforceable is "particularly important in specific performance cases").

The court's conclusion is based on several factors, but primarily and most significantly on the plain terms of the agreement. From those terms, it is evident that the parties were

7

agreeing to a framework for trying to settle their claims, but that they had not resolved their disputes as to all of the invoices, or even all their disagreements about the specific invoices referenced in the terms of the agreement. That is, although 77 Construction agreed to withdraw certain invoices (which it has not done), and other invoices were to be paid by UXB in an amount certain, UXB was "under no obligation to certify or submit any additional costs or expenses of 77 Construction" and retained "sole discretion" as to whether or not to do so. Additionally, 77 Construction was not precluded from making "additional requests for equitable adjustment [on the listed invoices] if its allowed overhead rate changes."

Furthermore, the expert report of 77 Construction was to be a crucial component in effecting the settlement, but the report 77 Construction has since provided (after the motion for enforcement was filed) is, according to UXB, wholly insufficient and does not comply with the requirements set forth in the agreement. Thus, this important part of the settlement framework (an expert opinion validating the costs claimed by 77 Construction) has not been established to the satisfaction of both parties. It is therefore akin to a condition precedent or contingency which never developed. Cf. Va. Power Energy Mktg., Inc., No. 3:11cv630, 2012 WL 2905110, at *4-*5, *8 (although parts of the agreement were "very detailed," its terms were subject to change; the agreement "describ[ed] the terms of a future transaction" based on a condition precedent that did not occur and was thus an unenforceable agreement to agree, not a valid contract).

Viewed differently, UXB seemingly wants to enforce only certain portions of the agreement, but taken together, the terms do not reflect that the parties intended such a piecemeal resolution. Instead, the agreement lays out a process or a framework by which the parties could resolve their claims. See Cyberlock Consulting, Inc., 939 F. Supp. 2d at 579 (an agreement to

8

reach a "contractual objective within an agreed-upon framework" is an unenforceable agreement to agree). It is the terms of the framework here that UXB alleges 77 Construction has failed to satisfy.

Notably, moreover, it was contemplated by the parties that this very problem might arise. That is, UXB was not required to accept any opinion from 77 Construction's expert, but instead, agreed to "review and to submit" revised invoices consistent with the expert's report to the corps, "subject to the requirements of the prime contract and FAR." Dkt. No. 116, Tr. at 5. The parties expressly recognized that "UXB is under no obligation to certify or submit any additional costs or expenses of 77 Construction unless it determines in its sole discretion that it can do so in compliance with its obligations and duties as the prime contractor."

As aptly described by the parties in their joint status report to the court, then, the agreement was not intended to settle part or all of their claims, but to "narrow the issues" and "facilitate the resumption" of settlement discussions. Dkt. No. 128-10 at 1 (July 31, 2014 letter). Further, as already noted, the parties recognized that "even if all conditions of the agreement are fulfilled, there remains the possibility that this will not resolve the dispute between the parties and the matter may still proceed to trial." Id.; see also Dkt. No. 116 at 6 (transcript of terms noting that there were "outstanding issues" between the parties, and that if the parties could not resolve those issues, they would be "free to resume litigation"). These various factors lead the court to conclude that the parties did not objectively manifest an intent to be bound, or, put differently, that this was merely an agreement to negotiate at a later time.[3]

---

[3] The magistrate judge also indicated that the parties would reduce the agreement to writing, which was never done. This fact alone is not dispositive, since an oral agreement to settle can be enforceable, see Snyder-Falkinham v. Stockburger, 457 S.E.2d 36, 41 (Va. 1995) ("[T]he mere fact that a later formal writing is contemplated will not vitiate [an] agreement.") (citations omitted)), but it supports the proposition that there was never a final and binding resolution.

9

In its reply, UXB relies on the doctrines of equitable estoppel and judicial estoppel, contending that both doctrines preclude 77 Construction from arguing that the agreement is unenforceable. Dkt. No. 132 at 12-16. For example, UXB has pointed out that 77 Construction's recently-filed Answer to UXB's counterclaim admitted twice that the parties reached an "agreement" before the magistrate judge, and also included as an affirmative defense claiming that the agreement bars the claims asserted in UXB's counterclaim. Dkt. No. 143 (citing Dkt. No. 142 at ¶¶ 169, 170 and affirmative defense number 8).

UXB also accuses 77 Construction of purposefully "using the judicial settlement process to stall the litigation for its benefit, and shortly before trial." Dkt. No. 128 at 1. In particular, UXB points out that 77 Construction's expert was subject to a motion to exclude shortly before mediation was ordered, and that 77 Construction has now designated a new expert, which is the same person used to meet its supposed obligations under the partial settlement agreement. Dkt. No. 132 at 9 n.19; id. at 15.

The court has carefully reviewed UXB's contentions in this regard, but concludes that they do not compel granting UXB the relief it seeks. If UXB's arguments and factual assertions are accurate, see Dkt. No. 132, 77 Construction's actions are troubling. As noted, UXB accuses 77 Construction of using the stay periods to prepare a new expert and obtain a new expert report rather than to attempt to meet its obligations under the parties' agreement. But this court may not enforce an otherwise unenforceable agreement as a sanction for bad behavior.[4] The terms of the agreement between the parties here were that they agreed to engage in a process to attempt to resolve their claims at a future date and upon gathering additional information. For the reasons

---

[4] The court may have to consider the issues raised in the motion to enforce, including 77 Construction's alleged bad faith, in another context and at another time.

10

already discussed, that is not a "settlement" of their claims, and the court will not enforce it as such.

**Motion for Protective Order**

Also pending before the court is UXB's motion for protective order. In that motion, UXB notes that 77 Construction had propounded written discovery responses to it in light of UXB's amended counterclaim. UXB sought a protective order staying its responses to that discovery until after a ruling on the motion to enforce. See Dkt. Nos. 145, 146. On March 3, 2015, UXB filed its reply in further support and argues that the discovery should be stayed pending a resolution on 77 Construction's motion to dismiss UXB's counterclaim, which is fully briefed and set to be argued before the court on March 16, 2015. The court will grant the motion for protective order in part and will not require UXB to respond to any discovery related to its counterclaim prior to the March 16, 2015 hearing. At that time, the court will either require responses within a reasonable time or extend the protective order. If the protective order is extended, however, there is the possibility that the trial cannot go forward as scheduled.

## CONCLUSION

For the foregoing reasons, UXB's motion to enforce the settlement agreement and for summary judgment on the settled claims will be denied. UXB's motion for protective order is GRANTED IN PART. UXB shall not be required to respond to the discovery requests propounded by 77 Construction at any time prior to the March 16, 2015 hearing before the court on 77 Construction's motion to dismiss.

Enter: This 4th day of March, 2015.

_____
Chief United States District Judge
11

Case 7:13-cv-00340-GEC   Document 151   Filed 03/04/15   Page 11 of 11   Pageid#: 4693