CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 16 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| 77 CONSTRUCTION COMPANY, | ) |
| Plaintiff, | ) Civil Action No. 7:13CV00340 |
| v. | ) **MEMORANDUM OPINION** |
| UXB INTERNATIONAL, INC., | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |

This case is presently before the court on the plaintiff's motion to dismiss the defendant's amended counterclaims. For the reasons set forth below, the motion will be granted in part and denied in part.

### Background

On June 9, 2004, UXB International, Inc. ("UXB") was awarded a prime contract by the United States Army Corps of Engineers. Pursuant to the prime contract, a delivery order was issued on December 28, 2009, which authorized funds for mine clearance and associated projects at Bagram Air Base in Afghanistan. UXB subsequently entered into a series of eight purchase order subcontracts ("subcontracts") with 77 Construction Company ("77 Construction"), pursuant to which 77 Construction agreed to provide construction and related services in support of UXB's demining operations.

The two largest subcontracts were for services related to the erection of base camps. On April 27, 2010, UXB and 77 Construction entered into Purchase Order 10-0028 ("PO-28") in the amount of $1,194,034.00. On May 19, 2013, UXB and 77 Construction entered into Purchase Order 10-0052 ("PO-52") in the amount of $2,781,142.00. Because these subcontracts were

expected to exceed $700,000.00, 77 Construction was required to submit certified cost or pricing data for the work to be performed, pursuant to the Truth in Negotiations Act, 10 U.S.C. § 2306a.[1] Prior to entering into PO-28 and PO-52, 77 Construction submitted a construction cost estimate analysis for each of the purchase orders, which identified various costs for labor and materials and included a 15% overhead charge.

In addition to PO-28 and PO-52, UXB and 77 Construction entered into six smaller subcontracts. On April 22, 2010, the parties entered into Purchase Order Number 10-0026 ("PO-26") in the amount of $18,750.00 for the delivery of 30 T-walls. On May 1, 2010, the parties entered into Purchase Order 10-0033 ("PO-33") in the amount of $110,000.00 for the rental of two cranes. On June 23, 2010, the parties entered into Purchase Order 10-0073 ("PO-73") in the amount of $300,000.00 for the installation of perimeter fencing. On July 2, 2010, the parties entered into Purchase Order 10-0078 ("PO-78") in the amount of $235,308.00 for the construction of a dog kennel. On July 29, 2010, the parties entered into Purchase Order 10-0091 ("PO-91") in the amount of $61,785.00 for the relocation of T-wall barriers. That same day, they entered into Purchase Order 10-0092 ("PO-92") in the amount of $171,075.00 for the construction of additional perimeter fence line.

In order to obtain payment for work performed under the subcontracts, 77 Construction was required to invoice UXB. 77 Construction issued a total of 26 invoices for services allegedly performed on behalf of UXB in 2010. Some of the invoices were paid in full by UXB, some were partially paid by UXB, and others were not paid by UXB.

---

[1] The Truth in Negotiations Act is incorrectly cited throughout UXB's amended counterclaims as 10 U.S.C. § 2603. The correct citation is 10 U.S.C. § 2306a.

On July 25, 2013, 77 Construction filed the instant action against UXB, seeking to recover for unpaid work allegedly performed pursuant to the subcontracts. In its amended answer, UXB alleges that 77 Construction submitted cost estimate analyses and invoices that falsely represented its actual overhead costs. UXB also alleges that 77 Construction submitted invoices that falsely represented certain material and equipment costs, and were not properly documented as required by the applicable contract provisions. UXB further alleges that 77 Construction breached a settlement agreement reached by the parties during a February 6, 2014 settlement conference. Based on these allegations, UXB asserts counterclaims against 77 Construction for fraud, breach of contract, and statutory recoupment.

77 Construction has moved to dismiss the majority of the counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on March 9, 2015. The matter has been fully briefed and is ripe for review.

## Standard of Review

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "To survive the motion, a complaint (or counterclaim, as is the case here) must contain sufficient facts to state a claim that is 'plausible on its face.'" E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

3

## Discussion

### I. Fraud

In Count I of its amended counterclaims, UXB asserts a claim for fraud against 77 Construction. The fraud claim is based on false representations that 77 Construction allegedly made in the invoices and cost estimate analyses submitted to UXB. UXB claims that 77 Construction submitted these documents with the intent to receive payment for improperly inflated costs; that UXB relied on the documents in paying 77 Construction for work performed under the subcontracts; and that UXB is entitled to reimbursement of the amount that was overpaid to 77 Construction for improperly inflated costs.

The parties agree that UXB's state law claims are governed by the substantive law of Virginia. In moving to dismiss the claim for fraud, 77 Construction argues that the claim is barred by Virginia's economic loss rule. The economic loss rule "is intended to preserve the bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their agreement." Richmond v. Madison Mgmt. Group, Inc., 918 F.2d 438, 446 (4th Cir. 1990) (internal citation and quotation marks omitted). The rule "prevents a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort." Id.

In determining whether the economic loss rule precludes an action in tort, the Supreme Court of Virginia has explained that "the law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." Filak v. George, 594 S.E.2d 610, 613 (Va. 2004). "[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Id.

4

The Supreme Court of Virginia has recognized that "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 507 S.E.2d 344, 347 (Va. 1998). To avoid turning every breach of contract into a tort claim, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Foreign Mission Bd. v. Wade, 409 S.E.2d 144, 148 (Va. 1991); see also Station #2, LLC v. Lynch, 695 S.E.2d 537, 540 (Va. 2010).

The Supreme Court of Virginia has also made clear that the economic loss rule does not bar claims of fraud in the inducement of a contract. See Abi-Najm v. Concord Condominium, LLC, 699 S.E.2d 483, 489-490 (Va. 2010) (emphasizing that "a false representation of a material fact, constituting inducement to the contract, on which the [party] had a right to rely, is always ground for rescission of the contract" and "also ground for an action for damages," and that the plaintiff's claim for fraudulent inducement was not barred by the economic loss rule). The rationale for this exception is that when fraud is perpetrated before a contract comes into existence, it cannot logically follow that the duty allegedly breached was one that finds its source in a contract. Abi-Najm, 699 S.E.2d at 490. To state a claim for fraudulent inducement, however, "a plaintiff must allege that the defendant made misrepresentations [that] were positive statements of fact, made for the purposes of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract." Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 452 (E.D. Va. 2009) (internal citations and quotation marks omitted).

Applying these principles, the court concludes that UXB's counterclaim for fraud must be dismissed. As summarized above, UXB seeks to recover as damages the amount of money that

5

was allegedly overpaid to 77 Construction, after 77 Construction submitted invoices containing inflated overhead, material, equipment costs. Under each of the subcontracts, 77 Construction agreed to provide certain services for UXB and to invoice UXB for the services performed. The court agrees with 77 Construction that the subcontracts are the source of any express or implied duty breached by the submission of false or inflated invoices and, thus, that this claim sounds in contract rather than in tort. See Dunn Constr. Co. v. Cloney, 682 S.E.2d 943, 947 (Va. 2009) (holding that a false statement made by a contractor in order to obtain payment for services performed pursuant to a contract did not violate a common law duty independent of the contract, and, thus, that the property owner could not maintain an action for fraud against the contractor); Richmond Metro. Auth., 507 S.E.2d at 348 (holding that false statements made to obtain progress payments under a contract did not give rise to a cause of action for actual fraud); County of Grayson v. RA-Tech Servs., Inc., No. 7:13CV00384, 2013 U.S. Dist. LEXIS 161323, at *11-12 (W.D. Va. Nov. 12, 2013) (holding that "[a]ny duty that RA-Tech had to . . . . submit accurate invoices . . . arose under the agreements between the counties and RA-Tech").

While UXB also maintains that 77 Construction submitted cost estimate analyses for PO-28 and PO-52 that falsely represented its actual overhead costs, UXB's claim for damages is based solely on the amounts that were allegedly overpaid in response to invoices for work performed under the subcontracts. See Am. Counterclaims ¶¶ 197-198 (alleging that UXB relied the cost estimate analyses when it paid the invoices submitted by 77 Construction). To the extent UXB intended to assert a claim for fraud in the inducement based on the cost estimate analyses, such claim is not adequately pled in Count I. UXB does not allege that it was induced to enter into these subcontracts as a result of the cost estimate analyses, or that it would have otherwise

6

renegotiated or reconsidered the subcontracts if it had been properly advised of 77 Construction's actual overhead costs. For these reasons, the court concludes that Count I must be dismissed.

## II.     Breach of the Implied Duty of Good Faith and Fair Dealing

In Count II of its amended counterclaims, UXB asserts a claim for breach of contract. As part of this count, UXB claims that 77 Construction breached the implied duty of good faith and fair dealing contained in the subcontracts. Under Virginia law, the duty to act in good faith and engage in fair dealing is implied in "every contract." Enomoto, 624 F. Supp. 2d at 450. The failure to act in good faith "does not amount to an independent tort," but "gives rise only to a cause of action for breach of contract." Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A., 466 S.E.2d 382, 385 (Va. 1996). The elements of such claim are "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." Enomoto, 624 F. Supp. 2d at 450.

To support its claim for breach of the implied covenant of good faith and fair dealing, UXB alleges that 77 Construction intentionally submitted false and inflated invoices for work performed under the parties' subcontracts, and, thus, acted dishonestly in performing its contractual responsibilities. Assuming the truth of UXB's allegations, the court concludes that Count II states a plausible claim for breach of the implied covenant of good faith and fair dealing contained in the subcontracts. See Enomoto, 624 F. Supp. 2d at 450 (holding that the plaintiff's claim for breach of the implied duty of good faith and fair dealing was properly pled, where the plaintiff alleged that the defendant's actions "were not merely unfavorable, but actually dishonest"). Accordingly, 77 Construction's motion to dismiss will be denied with respect to this claim.

## III.    Breach of the Settlement Agreement

In Count III of its amended counterclaims, UXB claims that 77 Construction breached a settlement agreement reached by the parties during a February 6, 2014 settlement conference. By

7

memorandum opinion and order entered March 4, 2015, the court denied UXB's motion to enforce the settlement agreement. See 77 Constr. Co. v. UXB Int'l, Inc., No. 7:13-cv-340, 2015 U.S. Dist. LEXIS 26541 (W.D. Va. Mar. 4, 2015). In so doing, the court ruled that "the parties' agreement was merely an agreement to attempt to settle their claims, or an agreement to negotiate at a later date, which is not an enforceable agreement under Virginia law." Id. In light of the court's ruling that the settlement agreement is not enforceable, UXB's claim for breach of the settlement agreement must be dismissed. See Filak, 594 S.E.2d at 614 ("The elements of a breach of contract action [include] (1) a legally enforceable obligation of a defendant to a plaintiff . . . .").

### IV. Statutory Recoupment

In Count IV of its amended counterclaims, UXB asserts a plea of recoupment under Virginia Code § 8.01-422, which provides as follows:

> In any action on a contract, the defendant may file a pleading, alleging any matter which would entitle him to relief in equity, in whole or in part, against the obligation of the contract; or, if the contract be by deed, alleging any such matter arising under the contract, existing before its execution, or any such mistake therein, or in the execution thereof, or any such other matter as would entitle him to such relief in equity; and in either case alleging the amount to which he is entitled by reason of the matters contained in the pleading. If the amount claimed by the defendant exceed the amount of the plaintiff's claim the court may, in a proper case, give judgment in favor of the defendant for such excess.

Va. Code § 8.01-422.

To support this plea, UXB alleges that it "has paid or Plaintiff is seeking approximately $1,150,000 in fees to which it is not entitled," due to "Plaintiff's willful and knowing overbilling of UXB"; that UXB "is entitled to offset this amount, $1,150,000, against any moneys Plaintiff has received or receives in damages" for UXB's alleged breaches of the purchase order subcontracts; and that, "to the extent that this amount exceeds any amount of damages Plaintiff is awarded, UXB is entitled to recoupment of the amount [of] any improper payments already made to Plaintiff [that]

8

exceeds Plaintiff's awarded damages." Am. Counterclaims ¶¶ 249-50. At this stage of the proceedings, the court concludes that UXB's allegations are sufficient to state a plausible defense under § 8.01-422.[2] See, e.g., Rosenbloom v. Integrated Sec. Sys., Inc., 73 Va. Cir. 71, 73 (Va. Cir. Ct. 2007) ("The Court finds that ISSI may plead statutory recoupment under Code § 8.01-422 because it both arises out of the same contract under which the Rosenblooms are seeking compensation (the Agreement) and it may entitle ISSI to relief, in whole or in part, against any obligation to the Rosenblooms."). To the extent 77 Construction moves to strike the defense, the motion will be denied.

## Conclusion

For the reasons stated, 77 Construction's motion to dismiss will be granted in part and denied in part.[3] The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 16ᵗʰ day of April, 2015.

*/s/ Glen Conrad*

Chief United States District Judge

---

[2] Although the parties refer to UXB's plea of recoupment as a counterclaim, it is technically an "equitable defense[]." Va. Code § 8.01-422; see also Cummings v. Fulghum, 540 S.E.2d 494, 496 (Va. 2001) (holding that "a recoupment plea asserted under Code § 8.01-422 is not a counterclaim or a cross-claim within the meaning of Code § 8.01-233"); Rosenbloom v. Integrated Sec. Sys., Inc., 73 Va. Cir. 71, 72 (Va. Cir. Ct. 2007) (noting that "statutory recoupment may be brought as an affirmative defense in a contract action").

[3] During the hearing on the pending motion to dismiss, the court granted UXB's request to stay further discovery pending a ruling on the motion, and advised the parties that any responses to outstanding discovery requests must be submitted within fourteen days of the court's decision. The court also granted UXB's request for leave to amend. To the extent UXB finds it necessary to amend its amended counterclaims in light of the court's rulings, the amended pleading must be filed within fourteen days.

9